UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SREEKRISHNA CHERUVU,

             Plaintiff,

      v.                                                    20-CV-808-LJV-LGF
                                                              DECISION & ORDER
HEALTHNOW NEW YORK INC., *et al.*,

             Defendants.

---

On May 27, 2020, the plaintiff, Sreekrishna Cheruvu, commenced this action in

New York State Supreme Court, Erie County, alleging violations of his civil rights under

42 U.S.C. §§ 1981, 1982, 1983, and 1985.  Docket Item 1-1.  He also brings claims for

malicious prosecution, common law fraud, intentional infliction of emotional distress,

and negligent infliction of emotional distress under New York law.  *Id.*  Cheruvu's claims

stem from his criminal prosecution and the associated investigation for his alleged use

of incorrect billing codes.  *See id.*  He has sued HealthNow New York, Inc., doing

business as Blue Cross and Blue Shield of Western New York ("BCBS"); Independent

Health Association, Inc. ("IHA"); Individual Practice Association of Western New York,

Inc. ("IPA"), an affiliate of IHA; Excellus Health Plan, Inc., doing business as Univera

Healthcare ("Univera"); and a BCBS employee, Susan Schultz, who is also known as

Susan Nason ("Schultz").  *Id.*

On June 29, 2020, the defendants removed the case to this Court based on

federal question jurisdiction, Docket Item 1, and about a month later, the defendants

moved to dismiss, Docket Items 11 (BCBS's and Schultz's motion); 13 (IHA's and IPA's

motion); 14 (Univera's motion).  The next day, this Court referred the case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 15.  On September 9, 2020, Cheruvu responded to the motions to dismiss, Docket Items 23, 24, 25; and about three weeks later, the defendants replied, Docket Items 30 (IHA's and IPA's reply); 31 (Univera's reply); 32 (BCBS's and Schultz's reply).  On March 23, 2022, Judge Foschio issued a Report and Recommendation ("R&R") finding that the defendants' motions should be granted. Docket Item 33.

On April 20, 2022, Cheruvu objected to the R&R.  Docket Item 36.  On July 15, 2022, the defendants responded to the objections.  Docket Items 39 (BCBS's and Schultz's response); 40 (Univera's response); 41 (IHA's and IPA's response).  And two weeks later, Cheruvu replied.  Docket Item 42.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection, response, and reply; and the materials submitted to Judge Foschio. Based on that *de novo* review, the Court accepts and adopts Judge Foschio's recommendation to grant the defendants' motion to dismiss the federal claims.  But for the reasons that follow, the Court declines to exercise supplemental jurisdiction over Cheruvu's state-law claims and remands those claims to state court.

## FACTUAL BACKGROUND[1]

In 1985, Cheruvu "obtained his New York medical license." Docket Item 1-1 at ¶ 23. In the years that followed, BCBS, IHA, IPA, and Univera all granted Cheruvu credentials as a participating physician and approved him as an in-network provider. *See id.* at ¶¶ 7-11, 14. But in early 2013, Cheruvu resigned as a BCBS participating provider, *id.* at ¶ 12. And in 2014, BCBS terminated Cheruvu in his capacity as a non-participating provider, *id.* at ¶ 15; Univera suspended Cheruvu as provider, *id.* at ¶ 14; and IHA terminated Cheruvu as a participating provider, *id.* at ¶ 13.

From 2009 until 2014, Cheruvu focused his practice on addiction medicine. *Id.* at ¶ 29. To treat patients with opioid addictions, Cheruvu sometimes prescribed Suboxone. *See id.* at ¶¶ 36-37. In addition to closely monitoring patients' Suboxone treatment, Cheruvu ensured that his patients received substance abuse counseling, sometimes including group counseling. *Id.* Cheruvu's treatment protocol followed the recommendation of several medical organizations, including the Substance Abuse and Mental Health Services Administration; the American Society of Addiction Medicine; and the New York Department of Health Office of Alcoholism and Substance Abuse. *Id.* at ¶ 37.

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

The Court assumes the reader's familiarity with the facts alleged in the complaint, *see* Docket Item 1-1, and limits its discussion of the factual background to the facts relating to Cheruvu's objections. For a full recitation of the facts, the Court refers the reader to Judge Foschio's R&R, *see* Docket Item 33 at 4-14.

As part of his practice in addiction medicine, Cheruvu employed Barry Herman, M.D., and Bidappa G. Maneyapanda, M.D., to provide backup coverage when Cheruvu was away or otherwise unable to see patients. *Id.* at ¶ 55. In addition, Cheruvu employed several licensed counselors and therapists. *Id.*

Two disputes arose about Cheruvu's billing practices, and those disputes ultimately led to both a criminal prosecution for insurance fraud and civil forfeiture proceedings. *See id.* at ¶¶ 35, 55, 58, 59. The first dispute centered on the billing codes Cheruvu used when patients were seen in group counseling. *See id.* at ¶ 36. The second concerned whether Cheruvu improperly billed for services provided by Dr. Herman and Dr. Maneyapanda when Cheruvu was traveling outside the country. *See id.* at ¶ 55.

Both the Federal Bureau Investigation ("FBI") and the Western New York Health Care Joint Task Force Work Group (the "Task Force") investigated the billing disputes. *See id.* at ¶¶ 35, 36, 43, 53. The Task Force works with federal and state law enforcement officials to investigate allegations of insurance fraud, and BCBS, IHA, and Univera are on the Task Force. *Id.* at ¶ 53. Schultz was BCBS's representative on the Task Force. *Id.* at ¶ 6. BCBS, IHA, and Univera also had internal Special Investigation Units ("SIU") that investigated allegations of insurance fraud,[2] *see, e.g.*, *id.* at ¶¶ 44, 61, 70, 71, and Schultz was a BCBS SIU investigator as well, *see id.* at ¶¶ 44, 64.

On November 11, 2011, Schultz and another BCBS SIU investigator, Janette Siuta, "arrived unannounced" at Cheruvu's office to discuss Cheruvu's billing code

---

[2] New York law requires insurance companies that conduct business in New York to maintain internal Special Investigation Units for the purpose of investigating suspected fraudulent activities. *See* N.Y. Ins. Law § 409.

practices. *Id.* at ¶ 38. Five days after that meeting, Cheruvu asked BCBS a billing question, and Siuta responded by email that Cheruvu should "go forward and bill [the services] as [he] previously ha[d,] and once . . . [the] issue [was] resolved [they would] make adjustments." *Id.* at ¶ 44.

But at the same time BCBS was advising Cheruvu to continue billing as he had previously, "BCBS took steps to initiate a criminal investigation" with the Task Force. *Id.* at ¶ 43. More specifically, on December 5, 2011, BCBS met with the FBI "to discuss the case," *id.*, and at some point, Schultz "requested" that the Task Force and the FBI investigate Cheruvu*, id.* at ¶ 53. Throughout the investigation, the Task Force and the defendants "exchanged information." *Id.*

In 2013, the FBI and the New York State Attorney General Medicaid's Fraud Unit raided Cheruvu's medical office. *Id.* And on May 29, 2014, the United States Attorney for the Western District of New York filed criminal and civil forfeiture complaints charging Cheruvu with insurance fraud for "billings [that] were improperly coded and made improperly for patient treatment while Cheruvu was out of the country."[3] *Id.* at ¶ 55; *see* Case No. 14-mj-80, Docket Item 1 (criminal complaint); Case No. 14-cr-130 (criminal proceedings); Case No. 14-cv-248 (civil forfeiture proceedings). That same day, federal agents arrested Cheruvu.[4] Docket Item 1-1 at ¶ 54.

---

[3] Cheruvu does not say where he traveled, but his objections suggest that he was in India. *See* Docket Item 36 at 23.

[4] The complaint alleges that Cheruvu was arrested on May 30, 2014. Docket Item 1-1 at ¶ 54. In his objections, Cheruvu notes that this was a typographical error and that he actually was arrested on May 29, 2014. *See* Docket Item 36 at 17 n.1.

Shortly after Cheruvu's arrest, David Dawson, another BCBS SIU employee, emailed FBI Special Agent Thomas Provost, Schultz, and other BCBS employees. *Id.* at ¶ 56. The email read: "I know this case was brought to the [T]ask [F]orce by [Schultz] and [BCBS's] former [i]nvestigators so it is nice to see these results, and that every[]one[']s hard work i[s] paying off. Thanks for the update." *Id.* On December 12, 2014, the United States Attorney for the Western District of New York filed a superseding indictment against Cheruvu. *Id.* at ¶ 58. Two days later, BCBS again celebrated the success of the criminal proceedings: Jared Gross, a senior vice president at BCBS, "exclaimed[,] 'Congrats to all. Getting this guy out of practice would be a big win for the community. Thanks!'" *Id.*

After lengthy criminal and civil forfeiture proceedings,[5] on August 21, 2019, the prosecutor advised Hon. William M. Skretny, the United States District Judge presiding over the federal cases against Cheruvu, that the parties had reached a pretrial resolution. Case No. 14-cr-130, Docket Item 314. More specifically, the prosecutor filed the "Government's Notice Regarding Dismissal" stating that the parties had resolved both the criminal and civil forfeiture proceedings "by way of a non-prosecution agreement between the government and the business through which Dr. Cheruvu practiced medicine." Case No. 14-cr-130, Docket Item 315. The next day, Judge Skretny dismissed the criminal proceedings. Case No. 14-cr-130, Docket Item 317. A stipulation filed in the forfeiture case provides that a portion of the seized funds were to

---

[5] For a full synopsis of the criminal and civil forfeiture proceedings, the Court refers the reader to the factual background provided in Judge Foschio's R&R, *see* Docket Item 33 at 10-14.

be returned to BCBS, IHA, and Univera.  Docket Item 11-5; *see also* 14-cv-248, Docket Item 47.

Cheruvu also faced criminal charges in state court: He was indicted in January 2015 by a grand jury sitting in New York State Supreme Court, Erie County.  Docket Item 1-1 at ¶ 59.  On November 13, 2019—that is, about three months after the resolution of the federal charges—the New York State Supreme Court dismissed the state charges "in the interest of justice."  *Id.* at ¶ 85.

## **DISCUSSION**

## I.     **CHERUVU'S OBJECTIONS**

Cheruvu begins his objections by identifying sixty "finding[s]," "conclusion[s]," "reference[s]," and "recommendation[s]"in Judge Foschio's R&R to which he objects. *See* Docket Item 36 at 5-15.  After reviewing Cheruvu's argument and the basis for his sixty objections, *see id.* at 15-25, however, they boil down to seven grounds.[6]  More specifically, Cheruvu objects that the R&R: (1) correctly identified, but then misapplied,

---

[6] To the extent that Cheruvu suggests that this Court must address and review *de novo* those sixty objections one by one, *see* Docket Item 42 at 5, he is mistaken.  An objection must not only identify the proposed findings and recommendations to which an objection is made but also must identify "the basis for each objection[]" and "be supported by legal authority."  W.D.N.Y. Local R. Civ. P. 72(b).  Cheruvu's sixty objections are specific in that he identifies the proposed findings and recommendations with which he takes issue.  But his objections also are conclusory in that he simply "objects to" a number of findings or recommendations of the R&R.  *See* Docket Item 36 at 5-15.  Later in his brief, *see id.* at 15-25, Cheruvu provides the bases and arguments for some of his objections.  The Court therefore considers those objections for which Cheruvu provides support later in his brief—*i.e.*, the seven objections identified above— but it will not address Cheruvu's sixty objections one by one.  Instead, it addresses Cheruvu's objections to the extent that they are implicated by his supporting arguments, *see id.*

the legal principles for assessing whether a private actor may be a state actor under section 1983, *see id.* at 5-7 (¶¶ 3-9), 17-19; (2) overlooked and misapplied legal authority in recommending dismissal of Cheruvu's section 1983 claims against Schultz based on absolute or qualified immunity, *see id.* at 7-9 (¶¶ 10-18), 20-22; (3) erred in finding that Cheruvu's allegations did not raise an inference of discrimination, *see id.* at 9-10 (¶¶ 20-26), 22-23; (4) misapplied Federal Rule of Civil Procedure 12(b)(6) in recommending dismissal of Cheruvu's malicious prosecution claims,[7] *see id.* at 5 (¶ 2), 11-13 (¶¶ 34-43), 15-17; (5) misapplied Federal Rules of Civil Procedure 9(b) and 12(b)(6) in recommending dismissal of Cheruvu's state common law fraud claim, *see id.* at 13-14 (¶¶ 45-50), 23; (6) overlooked legal authority in recommending dismissal of Cheruvu's intentional and negligent infliction of emotional distress claims, *see id.* at 14-15 (¶¶ 51-57), 23-25; and (7) erred in recommending dismissal with prejudice, *see id.* at 15 (¶¶ 58-60), 25.

## II.   SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Because the United States Constitution regulates only the Government, not private parties, a litigant

---

[7] Cheruvu also argues that Judge Foschio's recommendation to dismiss Cheruvu's state and federal malicious prosecution claims must be revisited in light of intervening Supreme Court authority, *Thompson v. Clark*, 142 S. Ct. 1332 (2022). *See* Docket Item 36 at 15-17.

claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir. 2005)).

Although private parties generally are not state actors, a private party "acts under color of state law" and may incur liability under section 1983 "when the private actor is a willful participant in joint activity with the State or its agents." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (citations and internal quotation marks omitted). "A private actor can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's rights." *Id.* (citation and internal quotation marks omitted).

Said differently, a plaintiff may proceed on the theory that the state and the private actor engaged in a conspiracy provided that "the complaint . . . allege[s] facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "A merely conclusory allegation that a private entity acted in concert with a state actor [will] not suffice." *Id.* (quoting *Spear*, 954 F.2d at 68).

Cheruvu objects that Judge Foschio misapplied the test for state action in finding that the defendants—all private actors—did not act under the color of state law in connection with Cheruvu's investigation and prosecution. *See* Docket Item 36 at 17-19. He argues that Schultz's request for the Task Force to investigate Cheruvu, the defendants' cooperation with the Task Force, BCBS's reporting Cheruvu to the New

York State Health Department's Office of Professional Medical Conduct ("OPMC"), and BCBS's emails celebrating Cheruvu's arrest and indictment raise an inference that the defendants were "a motivating force" behind Cheruvu's prosecution and therefore state actors.  *See id.*

As Judge Foschio correctly found, however, those allegations are insufficient to raise an inference that the defendants were "engaged in state action."  *See* Docket Item 33 at 21-23.  Cheruvu's allegations that Schultz asked the Task Force to investigate Cheruvu and that BCBS reported Cheruvu to the OPMC are not enough because "furnishing information to [state actors] does not by itself make someone a joint participant in state action under [s]ection 1983."[8]  *Id.* at 22 (quoting *Koziol v. King*, 2015 WL 2453481, at *12 (N.D.N.Y. May 22, 2015)).  His allegations that the defendants cooperated and interacted with the Task Force fare no better, as allegations of cooperation and "regular[] interact[ions]" with state authority "do[] not create an inference of agreement to violate a plaintiff's rights."  *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor.")

Cheruvu's additional allegations that BCBS celebrated Cheruvu's arrest and indictment do not save the day.  The celebratory emails shed no light on whether state

---

[8] That is the case even when the information provided is false.  *See, e.g.*, *Vazquez v. Combs*, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").  Accordingly, even if the information the defendants provided to the Task Force and law enforcement were false, that still would not suggest "joint participa[tion] in state action."

and federal law enforcement agents or the Task Force substituted the defendants'
judgment for their own.  Nor do they suggest a "common goal [between the State and
the defendants] to violate [Cheruvu's] rights."  *See Betts*, 751 F.3d at 85.  The emails
may well show that the defendants were happy to see Cheruvu prosecuted and counted
the prosecution as a win for the community (and perhaps themselves), but that does not
suggest some sort of arrangement between the defendants, the Task Force, and other
law enforcement agents to violate Cheruvu's rights.  *See Ginsberg v. Healey Car &
Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir. 1999) ("Section 1983 does not impose
civil liability on persons who merely stand to benefit from an assertion of authority under
color of law, but only on those who act under color of law.").

All that leaves Cheruvu's conclusory allegation that the defendants worked "in
concert" with the Task Force and other state and federal law officials.  *See* Docket Item
1-1 at ¶¶ 35, 36, 55, 90.  As explained above, however, "merely conclusory allegation[s]
that a private entity acted in concert with a state actor do[] not suffice to state a [section]
1983 claim against [a] private entity."  *Ciambriello*, 292 F.3d at 324 (quoting *Spear*, 954
F.2d at 68).  Cheruvu's allegations therefore do not raise a plausible inference that the
defendants were "willful participant[s] in joint activity with the State or its agents."  *See
Betts*, 751 F.3d at 85.

Cheruvu also faults Judge Foschio for overlooking Cheruvu's citation to *Daniels
v. Liberty Mutual Insurance Co.,* 2006 WL 2644949 (N.D. Ind. Sept. 14, 2006), and
argues that *Daniels* supports allowing his section 1983 claims to proceed.  See Docket
Item 36 at 19.  The problem with Cheruvu's argument is that *Daniels* arose in a different
procedural context.  The *Daniels* court was considering whether in conducting an

investigation, a private insurance investigator was acting as an "employee of the government" under the Federal Torts Claims Act ("FTCA"), not whether the investigator could be considered a state actor under section 1983.  2006 WL 2644949, at *4-7.

And even if *Daniels* were on point, its outcome, if anything, suggests *not* permitting Cheruvu's section 1983 claims to proceed.  Cheruvu notes how the *Daniels* court found that the private investigator "was not entitled to governmental immunity" and "allowed the suit for malicious prosecution to proceed."  Docket Item 23 at 24.  What Cheruvu omits is the reason the private investigator "was not entitled to governmental immunity": because, despite the close relationship between the FBI agents and the private investigator, the Court found that the investigator was not an employee of the government.  2006 WL 2644949, at *7.

At the end of the day, Cheruvu simply has not pleaded facts suggesting that the defendants were "willful participant[s] in joint activity with the State or its agents" and "share[d] some common goal to violate the plaintiff's rights."[9]  *See Betts*, 751 F.3d at 85.

---

[9] Cheruvu's citations to two law review articles—Aviva Abramovsky, *An Unholy Alliance: Perceptions of Influence in Insurance Fraud Prosecutions and the Need for Real Safeguards*, 98 J. Crim. L. & Criminology 363, 371 (2008), and Roger A. Fairfax, Jr., *Delegation of the Criminal Prosecution Function to Private Actors*, 43 U.C. Davis L. Rev. 411 (2009)—do not convince this Court otherwise.

Cheruvu notes how Dean Abramovsky's article explores the relationships between the insurance industry and prosecutors, including New York's requirement of SIUs, and how those relationships may increase the risk of private influence on prosecutors.  Docket Item 36 at 19.  But the mere fact that the creation of SIUs and the relationships between the insurance industry and government personnel create a *risk* of influence does not suggest improper influence here.  What matters here are Cheruvu's factual allegations, and, as just explained, those allegations are not enough to create a plausible inference of state action.

Fairfax's article discusses the ways that prosecutorial authority may be delegated to private actors and how best to mitigate against the risks that come with delegation of prosecutorial authority.  43 U.C. Davis L. Rev. 411.  But the examples provided in

This Court therefore agrees with Judge Foschio that Cheruvu's section 1983 claims are not plausible.[10]

## III.   RACE DISCRIMINATION AND CONSPIRACY CLAIMS

Cheruvu also brings claims under sections 1981, 1982, and 1985(3), alleging that the defendants conspired to discriminate against him because of his race.  All three claims require Cheruvu to allege facts that give rise to a plausible inference of discriminatory intent.  *See Sherman v. Town of Chester*, 752 F.3d 554, 567 (2d Cir. 2014) ("For both [section 1981 and 1982] claims, [a plaintiff] must allege facts supporting the [defendant's] intent to discriminate against him on the basis of his race."); *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) ("A [section] 1985(3) conspiracy must . . . be motivated by some racial or perhaps otherwise class-

---

Fairfax's piece are far more extreme than Cheruvu's situation.  For example, Fairfax discusses how the government may contract with private lawyers to prosecute criminal offenses, hire part-time prosecutors who still maintain private practices, or permit victims to bring criminal proceedings.  *See id.* at 415-24.  While Fairfax alludes to the dangers of the insurance industry's influence on prosecutions and investigations, his article does not directly address those dangers.  *See id.* at 423 n.38 ("Another phenomenon beyond the scope of this Article is where victims or other interested parties directly fund or subsidize public prosecution efforts.") (citing Abramovsky, 98 J. Crim. L. & Criminology at 381-88, and providing insurance industry as an example).

Moreover, although both articles explore the ways in which private parties may influence prosecution, neither article addresses the circumstances under which a private actor who participates in an informal or even formal relationship with the government, such as through the SIUs, may be held liable as a state actor under section 1983.  They therefore offer little insight on the viability of Cheruvu's section 1983 claims.

[10] Because this Court agrees with Judge Foschio that Cheruvu has not pleaded that the defendants, including Schultz, acted under the color of state law, it need not reach Cheruvu's objection that Judge Foschio erred in finding that even if the defendants were state actors, the section 1983 claims against Schultz should be dismissed based on absolute or qualified immunity.

based, invidious discriminatory animus behind the conspirators' action.").  "An inference of discrimination can arise from circumstances including, but not limited to, [1] 'the [defendant's] criticism of the plaintiff[] . . . in ethnically degrading terms; [2] its invidious comments about others in the [plaintiff's] protected group; [3] the more favorable treatment of [individuals] not in the protected group; or [4] the sequence of events leading to the [action against] the plaintiff[].'"  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (discussing possible inferences of discrimination in disparate treatment claims, including claims under section 1981).

Cheruvu argues that his allegation that the defendants "were determined to drive an Asian Indian physician out of practice for having the temerity to challenge SIU billing code decrees" suggests racial animus.  Docket Item 36 at 22-23.  But even if it is true that the defendants were determined to drive Cheruvu, an Asian Indian, out of practice, that does not mean the defendants were determined to drive Cheruvu out of practice *because* he was an Asian Indian.  In fact, Cheruvu's own allegation suggests that it was his nerve in "challeng[ing] SIU billing code decrees," not his Asian Indian ethnicity, that motivated the defendants to drive him out of practice.

Cheruvu asserts that a "jury could reasonably infer from such facts that Cheruvu was treated more harshly than a white physician[] because of his race."  Docket Item 36 at 23.  But that argument skips a step.  Although the "more favorable treatment" of someone "not in the protected group" may give rise to "an inference of discrimination," *see Littlejohn*, 795 F.3d at 312, Cheruvu would need to say something about the more favorable treatment of a similarly situated "white physician" in order to ask a jury to draw that inference.  But the complaint says nothing about how a "white physician" who

"challenge[d] SIU billing codes" was—or even would be—treated and therefore does not give rise to a plausible inference of discrimination.

In sum, Cheruvu offers little more than his own say so that defendants targeted him because of his race.[11]  But "[n]aked allegations" of race discrimination, without any supporting facts, are insufficient to state a section 1981 or 1982 claim.  *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988); *see Okudinani v. Rose*, 779 Fed. App'x. 768, 771 (2d Cir. 2019) (summary order) (noting that the elements of section 1982 are analogous to section 1981).  As Judge Foschio aptly noted, Cheruvu's complaint "contains only the naked allegations of race discrimination[ ] without any supporting facts that courts have held are insufficient to state claims based on [sections] 1981 and 1982."  Docket Item 33 at 32 (internal quotation marks omitted) (citing *Albert*, 851 F.2d at 572).  For the same reason, Cheruvu also "fails to allege any facts suggesting [the d]efendants conspired to perform any discriminatory actions or that such actions were based on [the p]laintiff's race," and his section 1985(3) claim also is not viable.[12]  *Id.* at 34.

---

[11] Cheruvu further argues that his allegations about the United States Attorney's press release after his arrest and its references to his travels to India suggest racial animus and discriminatory intent.  Docket Item 36 at 23.  That asks too much of the press release, especially when the underlying alleged fraudulent activity was that Cheruvu improperly billed for services when he was out of the country.  And even if the references to Cheruvu's international travels plausibly suggested racial animus by the United States Attorney, that allegation about prosecutors says nothing about the defendants who are insurance companies and an insurance company employee.

[12] Judge Foschio also recommended dismissing Cheruvu's request for attorney's fees under 42 U.S.C. § 1988 because Cheruvu is "not a prevailing party" on his section 1981, 1982, 1983, and 1985 claims and "thus[] is not entitled to an award of attorney fees under [section] 1988."  Docket Item 33 at 34-35.  Because this Court agrees with Judge Foschio that Cheruvu's claims under sections 1981, 1982, 1983, and 1985 should be dismissed, it also accepts Judge Foschio's recommendation to dismiss Cheruvu's section 1988 claim.  *See also Carvel v. Franchise Stores Realty Corp.*, 2009

## IV.    LEAVE TO AMEND FEDERAL CLAIMS

Judge Foschio recommended that the Court dismiss Cheruvu's federal claims with prejudice because "it is unlikely that [Cheruvu] can plead around the deficiencies in his federal civil rights claims."  Docket 33 at 51.  Cheruvu "[o]bjects to the recommendation . . . 'that [] the dismissal of such claims . . . be with prejudice,'" Docket Item 36 at 15 (capitalization omitted), but he does not explain how Judge Foschio erred in finding that Cheruvu was unlikely to plead around the deficiencies in his federal claims, *see id.* at 15, 25.  Nor does Cheruvu offer any insight on how he might amend the complaint to fix its deficiencies.  Although leave to amend should be "freely give[n]," *see* Fed. R. Civ. P. 15(a)(2), "denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured," *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (citation and internal quotation marks omitted).

The Court therefore adopts Judge Foschio's recommendation to dismiss the federal claims with prejudice and denies Cheruvu leave to amend his claims asserted under sections 1981, 1982, 1983, and 1985.

## V.    REMAINING STATE-LAW CLAIMS

Cheruvu's remaining claims for malicious prosecution, common law fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress

---

WL 4333652, at *9 (S.D.N.Y. Dec. 1, 2009) ("Because [] plaintiff's §§ 1981-83 claims have been dismissed, [] plaintiff is not a prevailing party on those claims and her [section] 1988 claim must likewise be dismissed.").

all arise under state law.  *See* Docket Item 1-1 at ¶¶ 114-138.  The defendants removed

the case to federal court based on the Court's original jurisdiction over Cheruvu's

federal claims under 28 U.S.C. § 1331 and the Court's supplemental jurisdiction over

Cheruvu's state-law claims under 28 U.S.C. § 1367.  *See* Docket Item 1.  Before

considering Cheruvu's objections to Judge Foschio's recommendation to dismiss his

state-law claims, *see supra* at 8 (objections 4-6), this Court first examines whether it

ought to exercise supplemental jurisdiction over those claims.

A "district court[] may decline to exercise supplemental jurisdiction over a claim" if

"the district court has dismissed all claims over which it has original jurisdiction."  28

U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it

balances the traditional 'values of judicial economy, convenience, fairness, and comity[]'

in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,

450 (1988)).  And "in the usual case in which all federal-law claims are eliminated

before trial, the balance of factors will point toward declining to exercise jurisdiction over

the remaining state-law claims."  *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at

350 n.7).

But this principle "does not mean that the balance of the factors always points

that way."  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).

Indeed, declining supplemental jurisdiction is not mandatory simply because section

1367(c)(3) applies.  *Id.* at 85.  Rather, "[w]hen § 1367(c)(3) applies, the district court

must still meaningfully balance the supplemental jurisdiction factors," *id.* at 86, and "[t]he

declining of supplemental jurisdiction must actually promote those values" of judicial economy, convenience, fairness, and comity, *id.* at 85.

The balance of those factors here weighs in favor of declining to exercise supplemental jurisdiction. As explained above, the federal civil rights claims that conferred jurisdiction on this Court are dismissed. Although this case began a bit over two years ago, it is still in its earliest stages; indeed, other than the briefing of the motion to dismiss and objections, little of substance has occurred. With Cheruvu's remaining claims all arising under state law, comity also points in favor of remand. And there is nothing to suggest that the other "values" that this Court should consider— fairness and convenience, *see Catzin*, 899 F.3d at 85-86—would be compromised by remanding this case back to state court.

In short, this appears to be the "usual case in which all federal-law claims [were] eliminated before trial" and "the balance of factors [] point[s] toward declining to exercise jurisdiction over the remaining state-law claims." *See Kolari*, 455 F.3d at 118. The Court therefore declines to wade into Cheruvu's state-law claims and remands his state-law claims for malicious prosecution, common law fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress to New York State Supreme Court, Erie County. *See Valencia v. Lee*, 316 F.3d 299, 308 (2d Cir. 2003) ("Because this case was commenced in state court, the district court should remand the action to the state court in which it was originally filed.").

## CONCLUSION

For the reasons stated above and in the R&R, the defendants' motions to dismiss, Docket Items 11, 13, 14, are GRANTED in part. Cheruvu's federal claims are

dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over his remaining state-law claims.  Cheruvu's state-law claims for malicious prosecution, common law fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress are REMANDED to New York State Supreme Court, Erie County.  The Clerk of the Court shall close the file.

SO ORDERED.

Dated:   August 12, 2022
             Buffalo, New York

_/s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE